SION. H. ROGERS, Adm'r, *v.* JOSEPH B. HINTON, *et. al.*

Where a *feme covert,* who had a separate estate of realty and personalty, with a general power of appointing the same by deed or will, disposed of such estate by will to various devisees and legatees, subjecting expressly only a portion of it to the payment of her debts: *Held,* that her creditors had a right to resort to the whole estate for their satisfaction.

*Also,* that there is no distinction in this respect between the realty and the personalty.

BILL, *reheard* upon petition by the defendants. The case as originally heard, is reported in Phil. Eq., p. 101.

*Moore,* and *Haywood,* for the petitioners.

1. The case of *Leigh* v. *Smith,* 3 Ire. Eq., 442, which is assumed by the Court in its former opinion to be decisive of the present case, differs from it in two marked particulars. *There,* the duty out of which the debt arose was incurred by the *feme covert, dum sola,* and so the debt bound her after coverture, (1 Ch. Pl. 42, 44, Tidd. 1026;) here the *debt* (?) was contracted *after* coverture, and so, as a general debt, is *void ; there,* also, the interest subjected was personalty, whilst *here* the interest is the *corpus* of land.

2. The *general debts* of *feme coverts* are absolutely void, even where they have powers of appointment, or separate estates, ⟨*Felton* v. *Reid,* 7 Ire. 269;⟩ it is only where the debts assume the nature of appointments operating specifically upon the separate estate, or the estate subject to the power, that they

have any operation. The greatest extent to which Equity has gone in this direction, is in correcting and validating *defective appointments.* The creditors *here* have, one, an open account, another a wood ticket, and the third an ordinary note under seal, against a *feme covert.* Neither of these papers pretend to refer to the power, or to create a charge, or otherwise to act immediately upon the property subject to the power. They are, therefore, *general debts,* and in no sense *appointments,* defective or otherwise, *Marshal* v. *Rutton,* 8 T. R. 547, 2 Roper H. & W. 117, 119; *Lloyd* v. *Lee.* 1 Strange 94, 1 Ch. Pl. 437, 470, 479, 2 Sug. Pow. 103; *Doe* v. *Weller,* 7 T. R, 480; *Martin* v. *Mitchell,* 2 Jac. & W. 413, 1 Sug. Purch. ch. 6, ss., 7 & 8, 2 Sug. Pow. 125, 127, 1 Sug. Pow. 416, 426, 427.

3. The English doctrine as to the *presumption* that *feme coverts* having separate estates *intend* to bind such estates for their contracts, extends only to *personalty,* and to the *profits of the lands, Stewart* v. *Kirkwall,* 3 Madd, 387, 2 Rop. H. & W. 241 (Jacob's note;) *Shattock* v. *Shattock,* 2 Law Rep. Eq. 182, 2 Rop. H. &. W. 182; *Hulme* v. *Tenant,* 1 Br. C. C. 16. This doctrine of presumption is not carried so far in North Carolina. Here a *feme* may bind her estate *with the consent of her trustee,* and the writing in such case *must expressly and specifically* indicate such intention on her part, *Frazier* v. *Brownlow,* 3 Ire. Eq. 037; *Harris* v. *Harris,* 7, Ire. Eq. 111; *Draper* v. *Knox,* 5 Ire. Eq. 175; *Johnston* v. *Malcolm,* 6 Ire. Eq. 120. As regards her power over her separate estate in land, the rule in North Carolina is the same as in England, *Newlin* v. *Freeman,* 4 Ire. Eq. 312.

4. The fact that here the *feme* is dead, leaving a will by which she appointed the real estate over which she had a power, to *volunteers,* does not give any validity to the *debts* (?) which they did not have in her life time, nor in any way aid the claimants, *Vaughan* v. *Vanderstegen,* 2 Drew. 165; *Shattock* v. *Shattock,* 2 Law Rep. Eq., 182, 2 Rop. H. & W. 238, 245, & n.; *Bruere* v. *Pemberton,* 18 Ves. 248; *Gregory* v. *Lockyear,* 6 Madd. 90; *Court* v. *Jeffrey,* 1 Sim. & Stu. 105; *Clinton* v. *Willis,* 1 Sug. Pow. 248, n.

5. That the *feme* here alludes to and makes some provisions for her " debts " in the will, can make no difference, for that. clause referred to property not a part of the separate estate,. and therefore was not included in the *limited probate* here granted, and therefore, further, is to be taken as not existing, even for the purpose of *election* if any such claim could arise here, much more not for the purpose of making out that to be a debt which otherwise is none, Adams' Eq. 92, &c., 2 Sto.. Eq. s. 1096, & n., 2 Sug. Pow. 165, 2 Wms. Ex. 1238; 1 Jarm. Wills. 389, 2 Rop. Leg 1602, *Melchor* v. *Burger*, 1 D.. & B. Eq. 634. ·

6. The cause turns on the point, are the claimants *creditors* of Mrs. Hinton within the legal meaning of that word? Did Mrs. Hinton owe them *debts*, such as could be enforced either against her or against her property, either at Law or Equity. If not, the bare styling of the claims *debts*, and the claimants. *creditors*, will not make them such. If Mr. Hinton had died first and Mrs. Hinton thereupon had expressly promised to pay any or all of these claims, such promise could not have been enforced by suit. The engagements would not even have constituted a *consideration* for the new promise, *Felton* v.. *Reid*, 7 Ire. 269.

*Fowle & Badger*, and *Batchelor*, contra.

I. The case here is *stronger* than that of *Leigh* v. *Smith*, 3 Ire. Eq. 442; for, in speaking of the *debts* of *feme coverts* in this connection, the Courts mean, *what would be debts but for the coverture.* Putting that objection of the petitioner aside, we have then a case where the debts were contracted (see affidavits of the creditors on file,) with specific reference to the fund, whereas in *Leigh* v. *Smith*, there was no such refer- erence. Nor does it make any difference that the corpus is. real estate and not personalty. For the same rule applies to realty as to personalty, *in cases involving a power of appoint- ment*, as here. Sug. 136; *Newlin* v. *Freeman*, 4. Ire. Eq. 312.

2. That the special probate omits the clause referring to Mrs. Hinton's debts, if true is not important. The power

here might be executed by deed or will, and the Court would, if necessary, sustain this, even as a defective *deed.* The rule that clauses not admitted to probate are to be treated as not existing, applies only in cases of election, and not to cases of defective execution of powers, 1 Jarm. Wills 389, Sug. 135, 136; *Wilkes* v. *Holmes,* 9 Mod. 485. The appointment of an executor in this will is *decisive;* as that is *a declaration that all engagements shall be paid, Heatley* v. *Thomas,* 15 Ves. 590; *Newton* v. *Turville,* 2P. Wms. 144; *Shattock* v. *Shattock,* 2 Law Rep. 182; *Leigh* v. *Smith,* 3 Ire. Eq. 442. Although if Mr. Hinton had died first, any *promise* to pay these debts by Mrs. Hinton would have been void, yet *an exercise of her power* would have bound the property, *Wilkes* v. *Holmes,* 9 Mod. 485.

4. There is no case of a coincidence of power and intention, where a defective execution has not been aided: such aid is given rather in wills than in deeds, *Heatley* v. *Thomas,* 15 Ves. 590.

BATTLE J. This is a proceeding by petition to rehear the decree made in the cause at January Term 1867. See the case as reported in Phil. Eq. 101. When the cause was first heard it was very fully and ably argued by the counsel on both sides, was carefully considered by us, and the opinion then filed was the result of our deliberate judgment. The questions involved in the cause have been again argued with more than ordinary zeal and ability by the counsel, have received our anxious attention, and yet we are unable to discover any error in the decree.

It is a matter of regret that the limited time allowed to us for the preparation of our opinion forbids a full and thorough review of the many propositions discussed by the counsel, and the authorities referred to in support of them. It is however, unnecessary for us to do so for the understanding of this particular case, because one of the counsel for the defendants, at the close of his learned and elaborate argument, admits that the whole cause turns upon one point: "Are the

persons who claim to be creditors of Mrs. Hinton, creditors within the legal meaning of that term? Did Mrs. Hinton owe to them debts—such debts as could be enforced, either against her or against her property, either in a Court of Law or in a Court of Equity?"

In responding to this enquiry, we assume, what is admitted, that the *feme covert* had a general power to dispose of the property, both real and personal, held by her trustee for her sole and separate use, either by deed or will, and that she did duly execute her power by will. Having the power to dispose of the property to whom she pleased, she had the right to select as the objects of that disposition those who had done services for her, those who had furnished her with what she deemed necessaries, or those who had lent her money, if there were any such. It is true that she could not render herself personally liable at law for her contracts, but she might, with the concurrence of her trustee if she had one, and without it if she had none, specifically charge her separate estate with contracts and engagements. What principle is there to prevent her doing the same thing by will, when she had the power of making a disposition in that manner. The separate property was conferred upon her for her support and maintenance, and if she obtained credit upon the faith of it, why not allow her to apply it in discharge of the obligation, by will, as well as by a deed in her life time. Such engagements may not be, technically speaking, debts, but substantially they were so for the purposes of being recognized as debts, by her will, and as such, charged upon the property over which she had the general powers of disposition. In the case before us, the *feme covert* testatrix in express terms spoke of her debts and funeral expenses as obligations for which she wished to provide the means of payment, and it would be contrary to the fundamental principles of equity not to regard the substance, instead of the mere form of things, and to hold that such obligations had not a higher claim to satisfaction than mere voluntary donations. But it is said by the counsel for the defendants that from the terms of the probate, the clause of

the will which directs the sale of the negro woman Happy, and the application of the proceeds to the payment of her debts and funeral expenses, cannot be received, as Happy was not a part of her property, and that therefore, as to her the will was not proved. If this be so, then Happy's name alone must be struck from the will, for the testatrix undoubtedly had the right to speak of her debts, and to provide for their payment; and in that view of the case, the debts would be charged upon the whole estate. But supposing that the case of *Whitfield* v. *Hurst*, 3 Ire. Eq. 342, establishes the doctrine that the probate of the will of a married woman having a separate estate, extends to all the property of which it professes to dispose, and leaves the construction of it to the Court of Equity, then, we think the failure of the fund out of which the debts were directed to be paid, gives the creditors a preference over the voluntary appointees under the will, and they are to be paid out of the other property subject to the power of appointment given by the will, and in execution of that power. So far as the defendant Joseph B. Hinton was concerned, we think that as he claimed the woman Happy as his property, he could not refuse to give effect to the disposition in favor of the creditors out of his interest in the appointed property.

In opposition to the view which we have here taken, the case of *Shattock* v. *Shattock*, 2 Law Rep. Eq. 182, has been strongly pressed upon us. But in that case the debt sought to be paid was not recognized in the will of the testatrix, and no direction for its payment was therein contained, which makes, as we think, an essential difference between that and our case. When a *feme covert* testatrix contracts in her life time, what she chooses to consider and call a "debt" in her will, we cannot conceive of any good reason why a Court of Equity, in the exercise of its high duty to do exact justice to parties, should not put it upon the same footing with a debt which she had contracted before marriage. If there be any difference it would seem to be in favor of the contract made during coverture, for that was made with direct

reference to the separate estate, and the other was not. If this be so, then the case of *Leigh* v. *Smith*, 3 Ire. Eq. 442, is a direct authority in support of the former decree, and of our present opinion.

Another objection is urged on the ground that the property now sought to be charged with the debts, is real estate. That, however, can make no difference, as real estate is as much liable to pay the debts of a decedent as personal property, with the sole exception that the latter must be first exhausted before the former is subjected. See Rev. Code, c. 46.

As we have been unable to discover any error in the former decree, the petition to rehear it must be dismissed with costs.

PER CURIAM.                    Petition dismissed.